IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MICHAEL JETT,
#M35618,

Plaintiff,

vs.

DEE DEE BROOKHART,
JOHN COE,
CUNNINGHAM,
JOHN BALDWIN,
WEXFORD HEALTH SOURCES, INC.,
NICHOLAS LAMB,
LORIE CUNNINGHAM,
SANDRA FUNK, and
ROBERT PATTERSON,

Defendants.                                    Case No. 17-cv-517-DRH

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

This matter is now before the Court for preliminary review of the First Amended Complaint filed by Plaintiff Michael Jett, by and through recruited counsel, on August 23, 2017. (Doc. 12). Plaintiff is incarcerated at Lawrence Correctional Center ("Lawrence"). He brings this action pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act, 42 U.S.C. § 12132, and the Rehabilitation Act, 29 U.S.C. §§ 794-94e. (Doc. 12, p. 2). Plaintiff suffers from severe dyslexia and claims that he has been denied access to programs, services, and activities at Lawrence because of his disability. (Doc. 12, pp. 2-3). He seeks

declaratory judgment, monetary damages, and injunctive relief. (Doc. 12, pp. 27-28).

The First Amended Complaint is now subject to preliminary review pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. The First Amended Complaint survives screening under this standard.

## First Amended Complaint

According to the First Amended Complaint, Plaintiff is unable to read or write. (Doc. 12, p. 8). He was diagnosed with severe dyslexia on or around

declaratory judgment, monetary damages, and injunctive relief. (Doc. 12, pp. 27-28).

The First Amended Complaint is now subject to preliminary review pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> > (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> > (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. The First Amended Complaint survives screening under this standard.

## First Amended Complaint

According to the First Amended Complaint, Plaintiff is unable to read or write. (Doc. 12, p. 8). He was diagnosed with severe dyslexia on or around

November 15, 1999.  *Id*.  He allegedly qualifies for services through the Illinois Office of Rehabilitation Services.  *Id*.  Plaintiff claims that he is also a "qualified individual with a disability" under Title II of the Americans with Disabilities Act ("ADA") and § 504 of the Rehabilitation Act ("RA").  *Id*.

When he arrived at Lawrence Correctional Center on April 10, 2013, Plaintiff notified Doctor Coe and Nursing Director Cunningham of his diagnosis, and he requested a reasonable accommodation in the form of an ADA attendant to help him read and write.  (Doc. 12, p. 8).  He allegedly provided documentation of his disability to Doctor Coe, Nursing Director Cunningham, Assistant Warden Brookhart, and, eventually, Transfer Coordinators Funk and Patterson.  (Doc. 12, p. 20).  No attendant was provided, so he filed a grievance seeking one.  (Doc. 12, p. 8).

Plaintiff was not issued an ADA permit[1] authorizing an ADA attendant until April 14, 2014, more than a year after he first requested one.  (Doc. 12, pp. 8-9).  He was initially assigned one or more attendants, but he claims that they were not properly trained to assist an individual with dyslexia and were therefore unqualified to serve as his ADA attendant.  *Id*.

On February 22, 2016, Plaintiff spoke about the issue with Dee Dee Brookhart, the Assistant Warden of Programs and ADA Coordinator at Lawrence.  (Doc. 12, p. 9).  He complained about the denial of a properly trained ADA

---

[1] The First Amended Complaint indicates that the permit is attached as "Exhibit A." (Doc. 12, pp. 8-9).  No exhibits accompany the amended complaint.

3

attendant. *Id*. The following day, Brookhart informed Plaintiff that "placement had been notified of [his] need for an ADA attendant." *Id*.

Before receiving a new assignment, Doctor Coe and Nurse Cunningham made the decision to cancel Plaintiff's ADA permit on June 7, 2016. (Doc. 12, p. 9). Plaintiff asked Brookhart to reinstate it. *Id*. Pursuant to his request, the permit was reinstated on December 21, 2016. *Id*. Even so, no ADA attendant was assigned to him. *Id*.

Plaintiff filed numerous grievances to complain about the denial of an ADA attendant and the failure to accommodate his disability. (Doc. 12, pp. 10, 23-24). He also filed written requests with Transfer Coordinators Funk and Patterson for a transfer to Robinson Correctional Center or Taylorville Correctional Center, two facilities that allegedly could accommodate his needs. *Id*. His complaints were ignored or denied. *Id*. Copies of these grievances were not provided with the First Amended Complaint. (Doc. 12).

Plaintiff now claims that his rights have been violated under the ADA, RA, Eighth Amendment, and Fourteenth Amendment. (Doc. 12, pp. 5-8). In the First Amended Complaint, he lists approximately two dozen policies, practices, or procedures at Lawrence that violate his rights under the ADA and more than a dozen that violate his rights under the RA. (Doc. 12, pp. 15-20). All stem from the denial of an ADA attendant or auxiliary aids and services[2] to assist him with reading, writing, and communicating. *Id*.

---

[2] Plaintiff provides the following examples of auxiliary aids and services he was denied: text-to-speech software, ADA readers, and other reading equipment. (Doc. 12, pp. 6-7).

The denial of these accommodations occurred in "critical situations" such as TABE[3] testing, medical and mental health appointments, disciplinary hearings, classification reviews, religious services, educational programs, and court hearings. (Doc. 12, p. 5). Plaintiff complains that he has been unable to effectively communicate with his friends and loved ones. (Doc. 12, pp. 6-7). He has not been alerted to critical prison communications about head counts, meal times, medical and legal call-outs, recreation time, etc. *Id*. He has also been excluded from educational, employment, and other programs. (Doc. 12, pp. 7-8). Plaintiff seeks declaratory judgment, monetary damages, and injunctive relief. (Doc. 12, pp. 27-28).

## **Discussion**

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court deems it appropriate to organize the claims in the First Amended Complaint into the following enumerated counts:

**Count 1 -** Defendants failed to accommodate Plaintiff's dyslexia in violation of Title II of the Americans with Disabilities Act. (Doc. 12, pp. 13-17) ("Count I").

**Count 2 -** Defendants failed to accommodate Plaintiff's dyslexia in violation of the Rehabilitation Act. (Doc. 12, pp. 17-20) ("Count II").

---

[3] TABE refers to the "Test of Adult Basic Education," which Plaintiff was given soon after he arrived at Lawrence. (Doc. 12, pp. 5, 7-8). The test is used to assess inmate eligibility for educational programs, vocational programs, training, and work. (Doc. 12, pp. 7-8, 11-13). Although the test is available in an audio format, Plaintiff was denied the audio version or any other form of assistance or accommodation. (Doc. 12, pp. 11-13). He was also denied a calculator. *Id*. Without any accommodations, Plaintiff was unable to meet the threshold requirements for these IDOC programs. (Doc. 12, p. 8).

**Count 3** - Defendants Cunningham, Coe, Brookhart, Funk, and Patterson exhibited deliberate indifference toward Plaintiff in connection with his dyslexia in violation of the Eighth Amendment. (Doc. 12, pp. 20-25) ("Count III").

**Count 4** - Defendants Brookhart, Lamb, and Wexford failed to supervise and train institutional staff with respect to the care of dyslexic inmates in violation of the Eighth Amendment. (Doc. 12, pp. 25-26) ("Count IV").

**Count 5** - Defendant Brookhart denied Plaintiff access to educational and vocational programs without any rational basis for doing so in violation of his right to equal protection of the law under the Fourteenth Amendment. (Doc. 12, pp. 26-27) ("Count V").

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these claims does not constitute an opinion regarding the merits. **Any claims not identified above but encompassed within the First Amended Complaint are considered dismissed without prejudice from this action.**

## Claims Subject to Further Review

### Counts 1 and 2

Plaintiff shall be allowed to proceed with his claims of discrimination based on his disability under the ADA (Count 1) and the RA (Count 2). Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The RA also prohibits discrimination against qualified individuals based on a physical or mental

disability.  *See* 29 U.S.C. §§ 794-94e.  Discrimination under both the ADA and RA includes the failure to accommodate a disability.

The Seventh Circuit has explained that a Plaintiff seeking to establish a violation of the ADA "must prove that he is a 'qualified individual with a disability,' that he was denied 'the benefits of the services, programs, or activities of a public entity' or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was 'by reason of' his disability."  *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (quoting *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996)).  *See also Jackson v. City of Chicago*, 414 F.3d 806, 810-11 (7th Cir. 2005); 42 U.S.C. § 12132; 29 U.S.C. § 794.  The analysis of RA claims is virtually the same, except that the RA also requires that the entity receive federal funds.  *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 671-72 (7th Cir. 2012).  Both the ADA and RA apply to inmates in the Illinois Department of Corrections ("IDOC").  *Cutter v. Wilkinson*, 544 U.S. 709, 716 n. 4 (2005).

In the First Amended Complaint, Plaintiff sets forth allegations suggesting that he is a qualified person with a disability.  He suffers from severe dyslexia and is unable to read or write without assistance.  Because the defendants refused to accommodate his disability, he was denied access to numerous services and programs at the prison, which include, but are not limited to, educational programs, vocational programs, work programs, occasional meals, health care, visitation, and the law library.  The Court finds that Plaintiff's allegations support an ADA and RA claim at this early stage.  *See Holmes v. Trustees of Purdue*

7

*University*, No. 06-cv-00114-AS, 2008 WL 5333541, at *11 (N.D. Ind. 2008) (parties did not dispute that dyslexia qualified as a disability under ADA but disputed whether plaintiff was regarded by his employer as having the disability or another learning impairment); *Grimes v. Union Planters Bank, N.A.*, No. 02-cv-1573-JDT-TA, 2004 WL 2378841, at n. 9 (S.D. Ind. 2004) ("Dyslexia, like carpal tunnel syndrome, may be substantially limiting or it may not. . . ."); *Lynch v. International Union of Elevator Constructors*, No. 03 C 8051, 2005 WL 3159322, at *4 (N.D. Ill. 2005) (Plaintiff provided insufficient evidence of disability under ADA where he alleged that he was diagnosed with dyslexia and prescribed Prozac but offered no evidence suggesting that any major life activity was substantially limited or how).

Plaintiff named two defendants in connection with his ADA and RA claims: Defendants IDOC Director Baldwin and Wexford. Individual employees of the IDOC cannot be sued under the ADA or RA. *Jaros*, 684 F.3d at 670; *Walker v. Snyder*, 213 F.3d 344, 346 (7th Cir. 2000) (overruled on other grounds). The proper defendant is the relevant state department or director in his or her official capacity. *See* 42 U.S.C. § 12131(1)(b); *Jaros*, 684 F.3d at 670, n. 2 (individual capacity claims are not available; the proper defendant is the agency or its director, in his or her official capacity). The Court finds that the proper defendant for both claims is IDOC Director Baldwin, in his official capacity, and Plaintiff has offered no reason for naming Wexford in connection with either claim. Plaintiff shall therefore be allowed to proceed with Counts 1 and 2 against

Director Baldwin in his official capacity. These claims shall be dismissed without prejudice against Defendant Wexford and with prejudice against all other defendants for failure to state a claim upon which relief may be granted.

**Count 5**

The Fourteenth Amendment's Equal Protection Clause "guards against government discrimination on the basis of race or other immutable characteristics." *Brunson v. Murray*, 843 F.3d 698, 705 (7th Cir. 2016). It provides that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Typically, claims of equal protection violations involve discrimination based on an individual's membership in a suspect class or the denial of a fundamental right. *See Martin v. Schwano-Gresham Sch. Dist.*, 295 F.3d 701, 712 (7th Cir. 2002). Plaintiff's claim does not.

Plaintiff asserts that he was subject to discrimination based on his disability. Individuals with disabilities fall into neither category because they are not members of a suspect or a quasi-suspect class. *City of Cleburne*, 473 U.S. at 446. However, this does not mean that Plaintiff lacks any protection.

Disparities in treatment of disabled individuals run afoul of the Equal Protection Clause when there is no rational relationship between the disparity in treatment and some legitimate governmental purpose. *Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356 (2001) (citing *Heller v. Doe*, 509 U.S. 312 (1993)). In the First Amended Complaint, Plaintiff alleges just that. At

9

this stage, the Court will allow the equal protection claim to proceed against ADA Director Brookhart.

In addition, the Fourteenth Amendment protects individuals from "class of one" discrimination. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012). A "class of one" theory applies if a plaintiff "has been intentionally treated differently from others similarly situated and . . . there is no rational basis for the difference in treatment." *Walker*, 543 F. App'x at 611 (quoting *Village of Willowbrook*, 528 U.S. at 564). The state of the law on "class of one" claims remains unsettled at this time. *See Brunson*, 843 F.3d at 706 (citing *Del Marcelle v. Brown Cnty. Corp.*, 680 F.3d 887 (7th Cir. 2012) (en banc). Given the current state of the law and the allegations in the First Amended Complaint, the Court cannot dismiss the "class of one" equal protection claim against ADA Director Brookhart at screening. Count 5 shall therefore receive further review against ADA Director Brookhart under both theories.

## Claims Subject to Dismissal

### Count 3

The Eighth Amendment proscribes the cruel and unusual punishment of prisoners. *See* U.S. CONST., amend. VIII. Prison conditions violate the Eighth Amendment when: "(1) there is a deprivation that is, from an objective standpoint, sufficiently serious that it results in the denial of the minimal civilized measure of life's necessities, and (2) where prison officials are deliberately

indifferent to this state of affairs." *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (internal quotation marks omitted) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). *See also Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008). Deliberate indifference is shown when a prison official acts or fails to act despite having knowledge of a substantial risk of serious harm to the inmate. *Farmer*, 511 U.S. at 842.

The Seventh Circuit has considered whether the denial of access to prison programs and services because of a learning disability supports an Eighth Amendment claim. *Johnson v. Randle*, 451 F. App'x 597, 599 (7th Cir. 2011); *Walker v. Samuels*, 543 F. App'x 610, 611 (7th Cir. 2013). In the case of an inmate who sought special education services for a suspected learning disability, the Seventh Circuit found no denial of basic "life necessities." *Johnson*, 451 F. App'x at 599. The Court reasoned that "[t]he Eighth Amendment . . . does not compel prison administrators to provide general educational programs for inmates" in the first place. *Id*. (citations omitted). "It follows, then, that refusing to take steps that might help [the plaintiff] exploit available programs could not violate the Eighth Amendment" either. *Id*. (citing *Rhodes*, 452 U.S. at 348).

The Seventh Circuit more recently found no Eighth Amendment violation where an inmate was denied a transfer to a facility with a "dual diagnosis" program that could provide drug treatment and accommodate her diagnosed learning disability. *Walker*, 543 F. App'x at 611. The Court reiterated that "[u]nder the 'life's necessities' standard, prison administrators were not required

11

even to provide the rehabilitation programs that [the plaintiff] seeks." *Id*. (citing *Rhodes*, 452 U.S. at 348; *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000) (concluding that inmate did not have constitutional right to participate in educational and substance-abuse programs)). *See also Garza v. Miller*, 688 F.2d 480, 486 (7th Cir. 1982) ("There is no constitutional mandate to provide educational, rehabilitative, or vocational programs, in the absence of conditions that give rise to a violation of the Eighth Amendment.").

The Eighth Amendment claims in *Johnson* and *Walker* were dismissed at threshold, and these cases are controlling. Plaintiff's claim also focuses on the denial of educational, vocational, rehabilitation and work opportunities at the prison. The Seventh Circuit has made it clear that the denial of access to these prison programs does not amount to an Eighth Amendment deprivation. Although Plaintiff lists a number of other "critical" situations where an ADA attendant was denied (*e.g.*, during announcements, medical appointments, prison law library, etc.), Plaintiff does not indicate how often he was deprived of one of "life's necessities" as a result. The Court is therefore unable to assess whether any other "critical" situations support an Eighth Amendment claim against one of the defendants. Accordingly, Count 3 shall be dismissed without prejudice for failure to state a claim upon which relief may be granted.

**Count 4**

Count 4 meets with the same fate as Count 3. Plaintiff characterized Count 4 as an Eighth Amendment claim against Defendants Wexford, Lamb, and

12

Brookhart for failing to supervise and train institutional staff on the proper care of dyslexic inmates. (Doc. 12, pp. 25-26). It is unclear whether Plaintiff intends to bring a supervisory liability claim against these defendants or a municipal liability claim under *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658 (1978). There is a difference between the two types of claims. *See Lessley v. City of Madison*, 654 F. Supp. 2d 877, 910 (S.D. Ind. 2009) ("There is a difference between supervisory liability and municipal liability for failure to train or supervise."); *accord Almaraz v. Haleas*, 602 F. Supp. 2d 920, 925 (N.D. Ill. 2008). *See McDonald v. Obaisi*, No. 16-cv-5417, 2017 WL 4046351, at *3-5 (N.D. Ill. Sept. 13, 2017). The allegations are conclusory and offer insufficient support for a viable claim either way. Regardless, the dismissal of Count 3 based on the Court's finding of no constitutional violation dooms Plaintiff's related failure to train claim. *See, e.g., Houskins v. Sheahan*, 548 F.3d 480, 493-94 (7th Cir. 2008) (collecting cases); *Tesch v. County of Green Lake*, 157 F.3d 465, 477 (7th Cir. 1998) (failure to train theory or failure to institute municipal policy theory requires finding that individual officers are liable on the underlying substantive claim). Count 4 shall also be dismissed without prejudice for failure to state a claim upon which relief may be granted.

## Injunctive Relief

In his First Amended Complaint, Plaintiff seeks injunctive relief, in the form of an ADA attendant[4] and another TABE test with accommodations for his

---

[4] If one cannot be provided, Plaintiff seeks a transfer to Robinson. (Doc. 12, p. 27).

disability.[5]  (Doc. 12, pp. 27-28).  Plaintiff does not seek immediate relief or invoke Rule 65 of the Federal Rules of Civil Procedure in conjunction with either request.  Should he deem immediate relief necessary, Plaintiff must file a separate motion pursuant to Rule 65, setting forth his specific request for interim relief and the reasons it is warranted.

Plaintiff also seeks a preliminary and permanent injunction requiring the defendants to "cease violating the respective aforementioned laws protecting Plaintiff" and an order requiring them to "implement policies and take actions that will ensure future compliance with the respective aforementioned laws and protections."  (Doc. 12, pp. 27-28).  This request is overly broad and vague.  Absent a motion defining the contours of his request for interim relief, the Court is unable to discern exactly what relief, if any, Plaintiff now seeks in the form of a preliminary injunction.  Plaintiff's request for a preliminary injunction is therefore **DENIED without prejudice**.  Plaintiff may renew this request by filing a separation motion pursuant to Rule 65 at any time during the pending action.

The request for permanent injunctive relief remains.  When injunctive relief is sought, it is appropriate to name the government official who is responsible for ensuring that the ordered relief is carried out.  *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011).  ADA Director Brookhart, who is already subject to Count 5, shall remain in this action, in her official capacity as well, for purposes of carrying out any injunctive relief that is ultimately ordered in this matter.

---

[5] He requests an audio TABE test or the assistance of a reader and/or writer during the test.

## Disposition

IT IS HEREBY ORDERED that **COUNTS 1** and **2** are subject to further review against Defendant **JOHN BALDWIN (official capacity only)**, and **COUNT 5** is subject to further review against Defendant **DEE DEE BROOKHART (individual capacity only)**. Defendant **DEE DEE BROOKHART (official capacity)** shall also remain in this action for the purpose of responding to and carrying out any injunctive relief that is ordered in this matter.

IT IS ORDERED that **COUNTS 3** and **4** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted against any of the defendants.

IT IS FURTHER ORDERED that Defendants **JOHN COE, CUNNINGHAM, NICHOLAS LAMB, LORIE CUNNINGHAM, SANDRA FUNK, ROBERT PATTERSON,** and **WEXFORD HEALTH SOURCES, INC.,** are **DISMISSED** without prejudice because the First Amended Complaint fails to state a claim against these defendants upon which relief may be granted.

With respect to **COUNTS 1, 2,** and **5**, the Clerk of Court shall prepare for Defendants **JOHN BALDWIN (official capacity only)** and **DEE DEE BROOKHART (individual and official capacities)**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint (Doc. 12), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to

sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a **United States Magistrate Judge** for further pre-trial proceedings. Further, this entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of

the costs, despite the fact that his application to proceed *in forma pauperis* was granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff.  Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

Judge Herndon
2017.09.20
07:08:19 -05'00'

**United States District Judge**